Please all rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now open for a suit of adjournment. The Honorable Susan F. Hutchinson presiding. Please be seated. Your Honors, this is the case of the Dr. W.G.S.T.-0259, Lake County Grading Company, and a little bit of liability company. Mr. Appellate, the First Midwest Bank has successfully been able to walk into this bank to defend its affidavit. On behalf of Mr. Appellate, Mr. Appellate, on behalf of the defendant affidavit, it is in the opinion of the court. Mr. McKibbage. Your Honors, in this case, the bank recognized Lake County Grading's lien. They filed a Section 34 demand requiring us to sue on that lien. We did so timely within the statutory requirements, and we served them with that complaint. And during the period of time that they had to answer the complaint, they went and they confirmed their sale motion that had been pending for over a year. And then they came and then defended the mechanics lien claim, and did so for 13 months before raising the issue of the list pendants. Let me ask one question to get my chronology correct. Who did the demand letter come from? Was that Waukegan or was that Midwest? It came from Waukegan. And who filed the motion to confirm? Was that Waukegan or Midwest? That was Waukegan. And who actually went forward on the motion? It was Waukegan. Okay, so Waukegan was, and who defended against your litigation? Waukegan defended it, and it wasn't until approximately a year later that First Midwest filed a motion to amend and come in as a successor in interest. All right, so throughout all of that time, Waukegan was involved, and Midwest came in and about that same time also filed the motion to dismiss, I assume. It was like the second or third motion to dismiss. The prior motions had been filed by the city of Waukegan Bank. All right, Waukegan Bank. Yeah, and so consequently, well, that's a chronology. This is a unique set of facts. There aren't a lot of cases that address the issues that are before this court. The issue of list pendants I don't think is appropriate in this case under this fact scenario. The purpose of list pendants is to protect an innocent purchaser. That's not the case here. The Bank of Waukegan was, in fact, the entity that asked for the work to be performed, and it was well asked. The crazy thing about this is the property was destroyed. The property that they bid on, the property that they had filed a motion to confirm the sale, no longer existed. And, in fact, there was nothing for Lake County Grading at that point to intervene on, although I submit that we couldn't have done it for the reasons I set forth under the McCutcheon case. And so, consequently, I don't believe the list pendants doctrine applies. First Midwest was the entity that filed the first motion that raised list pendants, correct? It was the third motion, but the first time the list pendants was raised. That's correct, Your Honor. Now, you said you couldn't intervene in the foreclosure case. Why not? Okay, under the McCutcheon case. McCluskey. McCluskey, I'm sorry. McCluskey case. It was necessary for the party to set aside the sale and set aside the judgment. In order to do that, the only thing under that McCluskey case, the only basis for that is to show that there was something wrong with respect to the sale. That wasn't the issue. Well, there's that catch-all at the end, I think it's subparagraph 4, that says that you can set aside the sale for any reason that justice may demand or whatever the language is. Justice may demand, but they go on to say, and I can't set it aside, but I can guess what it is right now. That's a small window only to attack the issue of justice may demand with respect to the sale and the judgment. But this lay kind of interest didn't accrue until after they filed the motion to confirm. And as I read McCluskey, the mechanism didn't exist for us to do that. Under the interpretation, I think. McCluskey does say that you could. It says the justice provision under section subparagraph 4, acts as safety valve to allow the court to vacate the judicial sale and in rare cases the underlying judgment. Why wouldn't this be that rare case where, as you indicate, the mortgagee who's the equitable owner of the property asks for the work to be done, promises to pay the work to be done, asks for the foreclosure to be, or for the mechanics to be foreclosed. Why wouldn't this be that rare situation where that couldn't be undone? Well, the race of the foreclosure had been destroyed. So at that point, what's there for us to get into and foreclose at that point? The property's gone. If we were to undo it and go to bid, theirs would have priority under that scenario, and there would be no remedy. But that's the practical side of it. I think that McCluskey still, as I read, if I'm reading it correctly, limits the application to the defect in the sale process. I understand the language says that, but as I read McCluskey, it's still limited to that question. I cited it in my brief, and I can't find it right off the top of my head. So Lake County Grading's interest accrues after they've done the work, of course, right? Correct. Now, was it after they did the work that the bank then filed the motion to confirm the sale? No. It was already pending? Yes. It had been pending for a year, a year. They filed a motion to confirm, I think it was in June, no, in April, and the fire took place in May, and we filed our lien in August. And then they waited all the way to the following year after we filed suit, after we responded to their request that we file suit, and we did so. If they didn't recognize our lien, if they weren't going to just rely on Elizabeth Penland's doctrine and knock us out of the box in that respect, they didn't have to service Section 34 demand on us. But they did so, and once we had filed it, they didn't move to consolidate or anything else. Prior to their filing an answer, they went and confirmed the motion that had been pending for a year. Well, they were under pressure from the city of Waukegan, correct, to clean up this area? When the fire happened, it was an emergency matter. The building was a big old Salvation Army warehouse had collapsed into the street, and so we came and, as alleged in the complaint. Well, you could have cleaned up the street without cleaning the whole area. No, no. The fire had destabilized the building, and walls had to come down, and it was a safety hazard. So that's a scenario under which the work was performed. But once again, the Waukegan Bank is not the one who actually finally brought the motion to confirm the sale, wasn't it First Midwest? No, it was Waukegan Bank. Okay. The chronology is Waukegan. Well, they filed it, but it wasn't, okay. Yeah, no, Waukegan Bank was in the picture for a year after Lake County filed a mechanics lien complaint. So they were there throughout the entire process. It wasn't until First Midwest substituted in that the pendants was raised. All throughout that entire time, Bank of Waukegan defended it. All right. The other side here also says that the mechanics lien is defective. What's the issue? Why is it not defective under their pleading or defense? Well, what they say is it's defective because we named two owners. There's no case that says it's defective if you name two owners. There are cases that say it's defective if you fail to identify the proper owner or defective if you fail to identify the contract. They're just saying, well, gee, you named them both. Okay. Now, I could have probably, when I filed the lien, filed two individual liens, and one would have been valid, one would have been invalid. But that's form over substance. And given what we were confronted with, the fact that when you go to do a title search, you see that foreclosure taking place. You go to the file. You see, oh, we've got something pending for at least six months in terms of the confirmation there had been a sale. So now we're in a trick box. Who's really the owner? At what point is the motion going to be confirmed before the mechanics lien actually makes it to the recorder's office? So as a safety net, you name them both. It's hardly defective because no one's claiming that an owner was not named. No one's claiming that the contract was not properly identified. So I don't believe that that has any merit. And the issue of the lien is, well, the issue of bringing the lien is to notify somebody, and it could have been one of two owners at the time you were requested to do so. And they were both notified. There's no question about that. And, obviously, we notified the right party because they served the Section 34 demand on us. So I don't believe that that particular argument has any merit. I'm a little confused by your record of the lien argument. If, in fact, your argument is correct that you could not intervene and your only recourse was to file a complaint before it closed on the mechanics lien, which you did, which was pending, then that complaint was erroneously dismissed, and you should go back to court on that. Correct. If, in fact, you could intervene, then you have an adequate remnant law, then you have an equitable remnant. Well, okay, could have intervened. You're asking, we're sitting here and saying, well, we're a trial court of Don's discretionary. If Lake County didn't have a right to intervene, even if we filed it, a court could have very easily said no. The sheriff's sale proceeded or the property is no longer where it was before. It's not appropriate to vacate it. The bank might even have fought us on it. I don't know. But the fact of the matter is, the reason for my equitable lien is I'm saying that if, in fact, we don't have a lien on the mechanics lien act because of the quirky facts we have here, that we didn't have an adequate remedy in the mortgage foreclosure under the Mortgage Foreclosure Act because that was nebulous. There was no guarantee that we could have had that. For your honor to say, well, we have an adequate remedy, you're trying to figure out what a trial judge might have done in their discretion because they do have broad discretion, although McCluskey says their discretion is narrow under the act. So I'm submitting that an equitable lien is appropriate under these facts because if we're boxed out of the mechanics lien because of some really weird application of the law, and I know your honors have dealt with mechanics liens. To me, it's like a Rubik's cube. For every answer, there's another answer. But at the end of the day, I think if for some reason we get boxed out, I think an equitable remedy is appropriate. Equitable lien. Could you have filed both? Could you have sought leave to intervene in the foreclosure and also responded to the 34? Or reading McCluskey, you just believed you couldn't get into the foreclosure? Correct. Reading the act, I didn't think I could get into the foreclosure. And as I said, too, from a practical standpoint, what am I going to interview if the property was destroyed? The bank, you know, the bank had a Well, there's still something underneath it. Right. The bank had a $300,000 plus lien on a building. So, you know, there wouldn't have been an adequate remedy at that point, no matter what. So it actually the decision hinged not. Well, you looked at the statute. You knew about McCluskey, but the it was a practical issue. What was it? It was both. I'm looking at it from a standpoint. And I get a section 34 demand. And the statute requires me to file suit. They're the ones who they can't have it both ways. They can't say file suit under Section 34. And we're going to go ahead and confirm the sale and knock it out of the box and continue to defend for over a year. I'm also assuming that the two different bank entities had different counsel. Is that a fair statement? Well, yes. But, you know, the first Midwest comes in way after all this is done. This is way, way beyond. Now, when they when they took over for Waukegan, they they obviously made some commitments to the to the government that they would pay, take care of issues that related to Waukegan. Correct. The bank, Waukegan. Not. No, not by the time first Midwest got involved. All that rectified. All that was done. City of Waukegan was. No, but I'm saying the Bank of Waukegan. Yeah. First Midwest took over the assets of the Bank of Waukegan. Right. They had certain obligations to to go forward by taking over the bank. Correct. And that would be this litigation. It was pending at the time. Right. And under the under the assumption, it does say that they take something to liens. And, of course, they knew what the lien was. They're the ones who intervened in this case. I didn't ask them to come in. Do they? Does it say we. And this I know I know the answer. But does it say we will also subscribe to all of the legal theories that other counsel on behalf of Waukegan courses? Yeah. That was my buzzer. Just a moment. That was if you want to sum up, you'll have an opportunity for reply. Thank you very much, Your Honor. Thank you. Ms. Paul. Good morning, Your Honors. Ms. Paul, could you pull the mic down just a bit? Thank you. And that hand's falling off. We need to get a smaller one. Sure. Yes. No. Good morning, Your Honors. Thank you for taking the time to listen to this today. I do agree with counsel that the facts are somewhat unique and detailed. However, it all boils down to a simple legal issue. And that is, under these circumstances, is there an exception to the Liz Penland's doctrine? And I maintain that there's not. Obviously, could they have, by the time, well, no, you weren't there yet. Could they have intervened in the foreclosure action? Absolutely. They could have intervened. To begin with, McCluskey wasn't decided at the time of the intervention. It wasn't case law. It came out afterwards. But the statute was the statute. But the statute was the statute. And I maintain they could have intervened under the justice was otherwise not done provision. They also could have intervened as a matter of right and filed some sort of motion to adjudicate the priority of their lien. And that would have even upset the sale. They could have said to the court, we have a lien here. Can you adjudicate the priority vis-a-vis the bank's mortgage? They didn't do anything. They never tried to intervene in the lawsuit despite the Liz Penland's that they knew about. And they didn't even have to know about the Liz Penland's considering it's constructive notice to all parties. Were they led down that path by the Section 34 letter? It's a good question, Your Honor. The Section 34 demand letter, in my opinion, basically said to Lake County Grading, Waukegan Savings Bank is saying, listen, we see you have a lien out there. You've got to enforce the lien within 30 days. We need to finish up this case. It's not incumbent upon Washington's Waukegan Savings Bank to instruct the plaintiff the proper form to bring his litigation. Certainly it's not. Well, all you can do under 34 is to file suit or an answer. And the letter doesn't even say file suit or an answer. It says file a suit. Correct, Your Honor. But I really believe they could have intervened and it would have sufficed. Or they could have at least tried to intervene and then simultaneously filed suit. At least they would have preserved their right in the foreclosure case. And they didn't do that. You're saying they could have done both? Perhaps. Or they could have at least filed a motion in the foreclosure case to adjudicate their lien, and then they could have filed that. But at least there would be something there. They at least abided by the fact that there is a valid Liz Penance on the property, the validity of which they do not argue with. Do we look at the purpose of Liz Penance? Yes. I mean, the purpose of Liz Penance is to protect plaintiffs from third persons who acquire an interest in property during litigation. So you're the plaintiff in the foreclosure case. You're protecting yourself from some person who acquires an interest in that property during that foreclosure litigation, which is what happened here. But, I mean, you're intimately involved. You stand in the shoes of Waukegan. So Waukegan is the one who asked for the work to be done, promised that the work would be done, asked for the 34 letter to be filed so that they could clear up this entire mess and probably sell the property to somebody else. How does Liz Penance, the purpose of Liz Penance apply in that situation, in this, again, this very odd fact situation? I believe because the Liz Penance statute is so sacrosanct, so powerful, that Waukegan Savings Bank had every reason to believe they were protected. And they sent the Section 34 notice, which they didn't have to do, by the way. They sent the Section 34 notice saying you've got to speed up the process somehow. You need to assert your lead. I do think that if we allow an exception to the Liz Penance doctrine to apply to these circumstances, it would erode the entire foundation, the spirit of the Liz Penance. There would no longer be finale or certainty ever. Well, the spirit of it, though, is it to protect someone who leads someone down a path and then chops them off for going down that path. If they had filed a petition to intervene in this case, are you saying it would be mandatory intervention or permissive intervention? Permissive. Okay, so a judge could say no. Judge could say no. Especially since the property is now destroyed, and what's the value of this land without a building on it now? Because when the foreclosure proceedings started, at least there was a building there that theoretically could have been rehabbed. Now there's nothing there. It's an empty lot. So a judge could say, you know, file your own mechanics lien foreclosure, because it's not going to affect what's going on here. Or file your contract action against Waukegan or Waukegan Success or whatever. And that's an interesting point. I think it also is important to note that under the Mechanics Lien Act, somebody does not ñ an architect can have a valid lien and they don't improve the property. There's an enhancement doctrine, and he enhanced the property. The Lake County rating enhanced the property by removing an unsafe, fire-ridden structure. And they could have proved that they enhanced the property to the extent that it would prime the bank's mortgage. They didn't do so. It wasn't as if there was no remedy at all. The Mechanics Lien Act does not allow for someone to do work on property, and if it's not, it doesn't ñ you know, an architect, for example, they draw plans. That's not physically on the property, but they still can lien for that work, such as Lake County grading. There's an enhancement to the property. If, in fact, Lake County grading had filed a motion to intervene, would you have had a valid argument to say that they gave up their lien by not filing a Section 34, filed Section 34 within 30 days, not filing a suit or an answer? You said they could file both, which theoretically, if you're covering all your bases, you probably do. But let's just say, you know, your argument now is they should have filed this petition to intervene. If they filed that petition to intervene, I just have this vision in my eye of you standing right there today arguing that they didn't file a Section 34 by not filing a lawsuit and not filing an answer. Well, I maintain they probably should have done both, but they didn't. I also think that it probably wouldn't have jumped. There was an equitable interest there. There was some sort of interest there, and it was only fair. If they filed both, what would have happened? I mean, what would a judge do? Because a judge would have to ñ I mean, if the judge goes forward on ñ let's say that they filed both, and the judge denies the intervention, grants the motion to confirm the sale, and then this other case is still pending, and then you guys come in again and motion to dismiss this foreclosure on the mechanics lien case, what happens then? I maintain that it was incumbent upon Lake County Grading to file a motion to consolidate. They could have consolidated the cases and put it in front of one judge in one action. But a consolidation isn't going to cure the problem that Justice Burke is talking about. If they're not going to be able to intervene, and you try to confirm, they can't stop that confirmation because they couldn't intervene, and you're now the owner. They knew about it. Too late for the lien. I do believe that they would have been able to intervene due to equity. I absolutely think they could have intervened. They didn't even have to upset the sale. All they had to do was ask the court to adjudicate the priority and validity of their lien. They didn't do that. They didn't do anything, and that's what we're left with here today. Well, you just used a word in one of your last answers that there was an equitable interest that they had. Why can't they go forward on an equitable lien? Because they didn't perfect the mechanics lien. The case law is clear. If you do not properly perfect your mechanics lien, you cannot move forward with an equitable lien. No case is set otherwise. Well, they weren't given a chance. What didn't they do? They didn't get an order saying that they will owe that money. If you look at the R.W. Booker case, it's the almost exact factual scenario as it was here. The lien claimant there, by virtue of the court denying and dismissing the mechanics lien count, could not bring an equitable lien, and the court was clear. There's one big difference in that case. In that case, the mortgagor contracted with the lien holder, with the mechanics lien holder, correct? Correct, but also in that case, there's an affidavit submitted to the court that said that the bank was aware that work was being done on the property and they didn't do anything, and they turned a blind eye to it. Being aware and actually asking for the work to be done, contracting for the work to be done, promising to pay for the work, demanding that a mechanics lien be foreclosed, that's a little different than just knowing about it, is it not? Or do you think it's the same thing? And I don't even know if in McCluskey and Satch, there's some evidence that they knew about it. I don't know that it was that clear that it was in the record that they actually knew about it. I agree. There was an inference that they knew about it. That's correct. I believe that innocence or lack thereof is not a determination with the Liz Penning statute. If you start going down that road, there's going to be an exception, and then the plaintiffs in litigation will never be protected the way they are today. I also think it's kind of a policy argument he's making. He's asking for the court to carve out an exception to the statute where there is otherwise none. And the legislature has even amended the statute. In 1917, when the statute was originally codified, the mere commencement of a lawsuit was enough constructive notice to the world that there was pending litigation. There were some harsh results because of that. In 1963, the legislature looked at the statute and said there's some harsh results here. We're going to amend this so that there's an actual notice that has to be recorded in the county in which the property is situated. At that time, they didn't carve out any further exceptions because I don't believe exceptions would apply here. I don't think it's a lack of it. Well, the harsh results in the cases they were referring to were harsh results to innocent third-party purchasers who took the property. Correct. Again, I mean, are you an innocent third-party purchaser standing in the shoes of Waukegan taking this property? I maintain that First Midwest Bank is its own separate entity. Well, let me ask you that. I mean, that's a threshold question here. I mean, what is the relationship between Waukegan Savings Bank and First Midwest? When you bought under the FDIC agreement this bank, did you not buy liability or assume liabilities? Correct, we did assume liabilities. However, if you look at 2.1 of the Purchase and Assumption Agreement, it's pretty clear, and it states, it's a comprehensive list, and it states, First Midwest Bank takes subject to liabilities for indebtedness secured by mortgages, deeds of trust, shadow mortgages, security interests, or other liens. I maintain that it did not assume liabilities for unsecured oral contracts. What's an other lien? What's an other lien? But that wasn't contemplated at the time. It wasn't indebtedness secured by a lien. There happened to become a lien. But the essence of this Purchase and Assumption Agreement was saying, First Midwest Bank accepts loans that are secured by property or liens. But the last phrase of that section that you just read said, or other liens. It doesn't say other secured liens. I maintain, and I think that the purpose of this is that they would have secured liens. Well, I know that you maintain that on behalf of your client, but the issue is it doesn't say that. It says secured liens in the first couple of words, in the first couple of sections of that sentence, and at the end it says, and other liens. I read it as indebtedness secured by and or other liens. You could still secure a property in the beginning with a lien, but this was never contemplated by the parties in the first place. They never entered it in this oral agreement and decided that if payment was not made, the property would serve as indebtedness. When First Midwest came into this case, the fire had already occurred. Waukegan Savings had purchased it. The fire had occurred, and Waukegan Savings was under the gun to the city of Waukegan to clean it up or else. And so you're saying that you are not responsible for that. I believe that First Midwest Bank is not responsible for oral contracts at all. They can't know about that. There's even a dash June document that protects it. Well, I mentioned they could have gone out and surveyed all the properties that Waukegan Savings had. There was nothing to prevent them from doing that. There was a lease pendant pending on this one, and you could have been able to find this in a wink. So the city of Waukegan said clean it up or else. Waukegan Savings didn't want the or else. They cleaned it up. If you didn't want the cleanup, why do you want the property? I mean, see, it just keeps going around. I understand, but this was a failed bank. They took it subject to certain liabilities. And you decided, not you personally, but your bank, your client decided that it wasn't the best bank, but it's got some good stuff. So we'll go there. Even if we did take subject to this lien, and I maintain that we didn't, I don't think it changes the results here. Waukegan Savings Bank has been portrayed as the villain here. They did send out a notice to Lake County Grading specifically reminding them, prompting them, inviting them to assert their lien. They didn't do so. They never did it in the correct way, nor did they attempt to. There was no attempt here to abide by the Liz pendant and intervene. And McCluskey, I think it's very important, he relies that he can't intervene in the foreclosure sale based on McCluskey, which wasn't the law at the time. It wasn't there. Well, he said he also looked at the statute. And had he seen the earlier McCluskey, he may have, if he had seen the appellate court McCluskey, he may have thought that. It's the Supreme Court McCluskey that prevented that. And I don't know if he, again, I don't know if the appellate court in McCluskey was even out at that point. But that being said, the statute allows that justice was otherwise not done. It was never fully clarified until McCluskey, which was not case law at the time, he was required to intervene. All right. If he intervened, he could possibly, I mean, this is the scenario that I think he's saying. I might have had the justice issue at the backside, but how is the justice issue going to affect the sale? You're saying it doesn't have to affect the sale, correct? I'm saying it doesn't have to affect the sale. The sale need not be disturbed. If the court determined that he had priority, his lien had priority via the enhancement doctrine over First Midwest Bank, it could have, the proceeds from the sale would first have gone to Lake County grading and then the remainder to the bank. There was a clear remedy there. Many times work is performed on a property after there's penance, and they are not out of luck. Just because the bank's mortgage predated it doesn't mean that they're out of luck under the Mechanics' Lien Act. And you wouldn't have come in and argued that First Midwest or that our lien has priority? You may have argued it, but I don't know if it would have won, to be quite honest. Because the enhancement doctrine, they improved the property. Without their work, they could have said the property would be worth less because it was a danger. They could have proved up their claim via the enhancement doctrine. Well, you would have been in litigation with the city of Waukegan as well. Perhaps, perhaps. But they didn't try anything. And to create an exception here in the Liz Pendon statute is a slippery slope to go down. And I think it created incredible confusion, and I think plaintiffs could no longer rely on the certainty and finality that it brings. If under certain factual scenarios, it does not span the entirety of litigation. The same issue of lien priority would have taken place had this case been fully litigated, correct? Perhaps. I mean, the foreclosure of the Mechanics' Lien, who pays what? Correct, correct. But it was brought in the wrong form. One last consideration I do want to say is the practical effects of this. So we remand this to the court. I think the court can take judicial notice that the property has been sold. I don't know how many times the property has been sold, and all the plaintiff is asking here is for the imposition of either an equitable lien or a Mechanics' Lien. And that begs the question, who then is responsible? He can only lien the property. Now it belongs to an innocent, bona fide purchaser who has absolutely no knowledge or any – How do we know that? The title – how do we know that – That they have absolutely no knowledge. We can presume based on – we can presume that might be for another day. Yeah. They would do a title search and see if it was pendent, correct? Correct. But they would also see – And that it was resolved. So they would have bought under that condition. No, I understand. But they also would have seen that the Mechanics' Lien had been invalidated by the court. And I must say that he did not file a motion to stay the sale. He didn't file in this appellate court or in the circuit court a motion to stay any conveyance of the sale. That would have preserved the property in its status quo, so he could have properly asserted the lien against the right party. You keep saying it was invalidated. The case of the Mechanics' Lien was dismissed. I believe the order said it was invalidated too. All right. Justice Burke. And Justice Spence. All right. Thank you very much. Thank you. Mr. Martinovich. Yes, Your Honor. Your Honors, we're sort of off on a tangent. I know there was some discussion here about, well, we could have proved up our lien and have been first in priority. At the time, the Supreme Court had rendered the opinion in the Cypress Creek case that has since been overturned by the legislature, where if you have an upside-down mortgage, the mortgage company had priority over liens. But anyway, that's an aside. We're really not looking for an exception to it. First of all, I don't think that under these facts that the Lisbonov's Doctrine applies, but we're really not looking for an exception to the Lisbonov's Doctrine. We recognize the Lisbonov's Doctrine, and we filed a lawsuit that they requested us to file. So there is a process. We did honor it. We did bring it to a judicial head. So I'm not sure that anybody's asking for an exception to the Lisbonov's Doctrine if it does, in fact, apply here, because all the issues are before a court. Well, counsel has argued that you should have or you could have and should have done both, which would have created a potential exception, which, of course, is not your argument. Your argument was the statute. I didn't think the statute let me in, and it was later confirmed by what you read in a subsequent case. So who wants to create the exception by this argument? Well, we're really not looking for an exception. Under Section 34, a lawsuit had to be filed or the lien rights would have been drawn. And they were filed, and they, to go back to the crazy facts here, lawsuit was filed. They were served. They still hadn't answered, and that's when they filed their, had a hearing on their motion to confirm and confirmed it, basically cutting out the legs of the mechanical lien case. All right. Well, do you have any authority that they should not have gone forward on that motion to confirm? This seems to be pivotal in your argument, that once they knew you were serious, they went in and cut your legs out. What, is there any authority that says they shouldn't have done that? No, Your Honor. None that I'm aware of. Again, these facts are going to be difficult to find. But, you know, just, you know, applying the statute under the Mechanics of the Act, a lawsuit had to be filed. And, you know, we can sit here and go through, you know, mental gymnastics in terms of procedurally what could have happened there, and it was all discretionary and whatnot. But at the end of the day, there's no prejudice. Once it was filed, it was up to them to confirm or not confirm. They let it sit for a year and waited until the complaint was filed that they asked them to file. But because you were not in that case to intervene, you couldn't say, hey, they've been sitting on this, they've given up, you know, their right to go forward. You had no say. No, and from my perspective, at the end of the day, you know, they could go ahead and confirm the sale, but they're still subject to a mechanics lien that was filed, a properly perfected mechanics lien. To perfect the mechanics lien, you have to go through the statutory requirements and file a lawsuit. That was done. That was perfected. And they chose to, for whatever reason, confirm the sale and still go on with the litigation with the mechanics lien. Counsel raises an interesting point that if we would agree with you, what happens now? If, in fact, there have been subsequent sales, a subsequent sale, does it make any difference if there have been one or ten? What are you going to do? What are we going to do? Well, they took subject to the list of pendants, my list of pendants, okay? Because I filed my list of pendants the day before they actually did the confirmation, which is another quirky fact here. So whoever bought it took it subject to this. If some title company is going to come in and defend this or pay. But that's a practical aspect. That's really my risk. But at the end of the day, whatever they did with it, and I don't know that. Counsel is asking for judicial notice. I'm not sure that's appropriate. Judicial notice, I don't know any facts to support that. But if, in fact, they did sell it, that's a risk. That's something I have to deal with. You talk about these facts being unusual. The closest factual scenario is that Volcker case. I don't think it's close. That's the only thing that addresses a situation where there was mechanically at some point. But that's way before. And the parties are different, as Your Honor pointed out. Here we've got the bank, the foreclosing bank, actually being the contracting party. We don't have that in the Volcker case. But, yeah, I guess to answer your question directly, yeah, the closest case that comes in close is the Volcker case. That's correct, Your Honor. If you have anything you want to say in summary, you may proceed. Otherwise. I don't, Your Honor. I thank everyone for their attention. Thank you so much. Yes, we've heard of mechanics liens here before. You're right. It's a little bit like a Rubik's cube. And because of that, we certainly appreciate your arguments here today. To give us further enlightenment, we will enter a decision in due course. We're going to stand now in recess to prepare for our next oral. Thank you.